Martin, adm'r, vs. Gordon.

ABRAHAM MARTIN, adm'r, plaintiff in error, vs. ALEXANDER J. GORDON, defendant in error.

Upon a suit for damages for a breach of warranty, the amount of consideration money recited in the deed, is inquirable into, and neither the grantee nor any subsequent conveyance, in the absence of fraud, in case of eviction, is entitled to recover more than the price actually paid for the land, with the interest thereon.

A covenant that runs with the land, does so, by virtue of being, as it were, *annexed to the* land. Therefore, if the covenantor has no title to the land, the covenant cannot run with the land.—BENNING J.

Covenant, from Harris Superior Court.    Tried before Judge WORRILL, at October Term, 1857.

This was an action by Abraham Martin, administrator of his deceased wife, Sarah Martin, formerly Wardlaw, against Alexander J. Gordon, to recover damages for breach of a covenant of warranty of title to a lot of land.

It appeared that defendant sold and conveyed the land to one John Fife, and the price or consideration, as contained and recited in his deed, was 500 dollars. That Fife, in consideration of 1000 dollars, as recited in his deed, sold and conveyed the premises to Sarah Wardlaw, afterwards wife of plaintiff. There was the usual covenants of warranty in both deeds, and proof of an eviction by title paramount.

Upon the trial defendant offered to prove that the sum paid for said land to him by Fife was but 100 dollars, and not 500 as stated in the deed.

Plaintiff objected to the testimony as inadmissible against a *bona fide* purchaser for value without notice.

The Court overruled the objection and admitted the evidence, and plaintiff excepted.

Defendant then proved that Fife only paid 100 dollars for the land, and executed to Gordon his bond to indemnify him against loss or damage on account of his warranty.

The deed from Gordon to Fife was dated 26th August, 1837, and from Fife to Sarah Wardlaw, 28th Sept., 1838.

The testimony being closed, plaintiff requested the Court to charge the jury, that if Gordon received 100 dollars in money for the land, and also Fife's bond of indemnity, and executed his deed of warranty for 500 dollars, that the plaintiff was entitled to recover the 500 dollars and interest, and the defendant must rely upon his bond of indemnity against Fife.

The Court refused so to charge, but held and charged that plaintiff could only recover the one hundred dollars and interest. To which charge and refusal to charge, plaintiff excepted.

The jury found for the plaintiff two hundred and sixty dollars and cost of suit.

Whereupon counsel for plaintiff tenders his bill of exceptions.

B. H. HILL, for plaintiff in error.

D. P. HILL, for defendant in error.

*By the Court*—LUMPKIN J., delivering the opinion.

In *Harwell and another vs. Fitts*, (20 *Ga. Rep.* 723,) this Court held that the recital in a deed, as to the consideration money, was inquirable into in a Court of law, as between the original parties. Indeed this proposition is not disputed by counsel for the plaintiff in error.

This being so, how is the subsequent conveyancee entitled to any greater privileges than Fife, the immediate feoffee of Gordon? The plaintiff can derive no benefit from the bond of indemnity taken by Gordon, for his own security. Gordon sold the land for an inconsiderable sum, owing, no doubt, to the defect in the title, and took the bond of his vendee to save him harmless. This bond can in no wise inure to the benefit of the plaintiff's intestate.

Martin, adm'r, vs. Gordon.

The result of a careful examination of the authority estab-
lishes that subsequent purchasers are affected by the equities
between previous parties. If A sells land to B, with cove-
nant of warranty, and B releases A and sells to C, who is
evicted by paramount title, A is nevertheless discharged,
and damages cannot be recovered against A by C upon A's
warranty to B. If Fife could only recover one hundred dol-
lars with interest from Gordon, that being the price actually
paid by him for the land, the administrator of Mrs. Martin,
formerly Mrs. Wardlaw, can recover no more.

Actual fraud is not pretended in this case. It does not go
upon that idea. The truth is, Fife, the only person to whom
Mrs. Martin looked for damages, is insolvent. She may
never have seen the deed from Gordon to Fife. Could it be
made to appear, either at law or in equity, that Gordon and
Fife combined to cheat Mrs. Martin, the result would l ave
been different. The facts upon the record warrant no such
conclusion.

The plaintiff must be content then to recover the actual
price paid for the land, with interest thereon, and no more :
that being the measure of damages for the breach of Gordon's
warranty of title.

Judgment affirmed.


BENNING J. concurring.

Gordon sold and made a warranty to Fife, and Fife sold
and made a warranty to Mrs. Martin. Gordon had no title
to the land. Did the warranty pass to Mrs. Wardlaw?

"In the early case of *Noke vs. Awder* (*Cro. Eliz.* 417,) John
King had made a lease for years to Awder, the defendant,
who conveyed it to one Abel, and covenanted that he and his
assigns should peaceably enjoy it without interruption. From
Abel the lease came by assignment to the plaintiff, who, be-
ing ousted by one Robert King, brought an action upon the
covenant. The case was on the point of being adjudged for

the plaintiff, when Sir E. Coke, who was counsel for the defendant, raised this dilemma: in order to entitle the plaintiff to recover he must show that he was ousted by a lawful and paramount title, it being well settled that the covenant is not broken by a mere tortious entry of a stranger; and if he show the eviction to be under paramount title, then nothing passed from the covenantor but a lease by estoppel, and as no estate passed, the subsequent assignee, who took nothing, of course, lost the benefit of the covenant, which could only pass as an incident to the estate; this argument was successful, and the judgment for the plaintiff arrested." *Rawle Cov. Title,* 389.

This case has been repeatedly followed by the English Courts down to this day. *Andrew vs. Pearce.* 4 *Bas. & Pul.* 162; *Whittin vs. Peacock,* 2 *I ingham N. C.* 411; *Pargeler vs. Harris,* 7 *C. B.,* 708; *Green vs. James,* 6 *Mees. & W.* 656; *Webb vs. Russell,* 3 *Term R.* 393.

It has not been followed by the Courts of New York, or those of Massachusetts, or those of some of the other States of the United States; but those Courts, if one may judge from the face of their decisions, seem rather to make the law yield to the case, than the case to the law. *Rawle Cov.* 394, *et seq.* The power to do this, is not given to any Court of this State.

The English cases, I think, speak the law of Georgia.

If they do, then the plaintiff got more in the judge's charge than he was entitled to. Gordon having no title when he made the warranty to Fife, the warranty did not pass from Fife to his assignee, Mrs. Wardlaw; and, consequently, a right of action on it never vested in her, and Martin, her subsequent husband, could not be entitled to recover anything from Gordon, yet, the Court told the jury, that they might find as much as one hundred dollars for him.

Again, I am very much inclined to think that the bond given by Fife to Gordon, operated as a *release* of Gordon from his covenant. This bond was made before Mrs. Wardlaw purchased. If the bond had been a release, it would, according to *Middlemore vs. Goodale* (*Cro. Car.* 503,) have extin-

guished the covenant, and therefore, would have prevented it from passing to Mrs. Wardlaw; and this, whether she purchased, with or without notice of such release. Being extinguished, it would be no longer annexed to the land, and therefore, could not pass with the land. But I reserve my opinion as to the effect of this bond on Gordon's liability to Fife's assignee. *Suydam vs. Jones,* 10 *Wend.* 180.

McDONALD J. dissenting.

The judgment of the Court below is affirmed by a majority of this Court. I dissent from the judgment of affirmance.

The plaintiff's intestate purchased of John Fife a tract of land and took his deed warranting the title. John Fife purchased of Alexander J. Gordon, the defendant, and the consideration expressed in the deed was five hundred dollars. The defendant's intestate was sued for the land and evicted. The defendant was notified of the suit and called on to defend. The present suit is against Alexander J. Gordon, as a remote warrantor. The plaintiff on the trial offered and read in evidence the above named deeds, which contained the usual clauses of warranty of title. He read in evidence also, the record of the suit against his intestate for the money of the land, and the notice to defendant, and closed his cause.

The defendant then proposed to prove by Benjamin F. McDaniel, that though the deed from Gordon to Fife recited that the consideration which he paid for the land was five hundred dollars, yet in truth it was only one hundred dollars. The plaintiff objected to the testimony as inadmissible against a *bona fide* purchaser without notice. The Court admitted the evidence and the plaintiff excepted.

A covenant of warranty runs with the land, and though the words "and assigns" be omitted in the warranty the remote grantee may sue in his own name. *Leary vs. Durham,* 4 *Ga.* 603; *Redwin vs. Brown et al.,* 6 *Ga. Rep.* 317, 318. The plaintiff's intestate was the assignee, therefore, of the

contract or covenant of warranty made by Morgan to Fife, and had a right to look to the entire deed to ascertain the extent of her rights and remedies on that covenant, if it should become necessary to resort to it.   Knowing that she had a right to look to that as security, in the event of the failure of the title and the insolvency of her immediate grantor and warrantor the grantor ought to be held bound by his admissions and covenants therein.   No sound or commendable reason is apparent why a greater consideration should be expressed in the deed than was in fact received.   It certainly could be of no advantage to the grantor, who, should his title fail, is bound to respond at least for the consideration money and four years interest, the period which bars an action for *mesne* profits.   If the consideration was put in for a larger amount than he actually received, to answer the immoral purposes of a speculator, who wished to exaggerate the cost of the land, to extort a higher price from an unsuspecting and honest purchaser, the grantor ought not to be allowed to retract his written declaration, perhaps made and certainly used for such a purpose, when he is called on to respond to the defrauded purchaser.

Down to the period of our revolution and long after, the rule of evidence of the English Courts admitted no evidence to add to, vary or contradict the terms of a deed, 1 *Phillips Evidence,* 548.   This rule extends to the consideration.   *Baker vs. Dewey,* 1 *Barnwell & Cresbull,* 704.   The case of *The King vs. The Inhabitants of Scammenden,* 3 *Tenn. Rep.* 474, is an authority for the contrary doctrine.   But the authorities referred to by Lord Kenyon, do not support him, and that case has not been followed in England   The American authorities have relaxed the rule if not destroyed it, and seem to admit very liberally, evidence of additional consideration of the sort expressed in the deed, or what consideration was paid, when the deed states that there was a consideration, but does not express what it was, &c.   But this is not done when it

would prejudice a *bona fide* purchaser without notice. *Duvall vs. Bibb*, 4 *Herring & Mun. Rep.* 113.

When the witness McDaniel was sworn, he testified, that Fife paid Gordon one hundred dollars only for the land, and it was understood at the time, that there was a dispute about the title, and Fife executed to Gordon his bond for $500, to indemnify him against loss for putting the consideration of $500 in the deed. This is the manifest understanding of the case from the imperfect record before us. When the case was closed, the counsel for the plaintiff requested the Court, in writing, to charge the jury that if Gordon received $100 in money for the land, and Fife's bond of indemnity against loss on account of his warranty, and for this reason executed his deed and warranty for $500, the plaintiff was entitled to recover the $500 and that the defendant must rely on his indemnity bond against Fife. The Court refused to give this charge, and counsel for plaintiff excepted.

I think the charge ought to have been given. Upon the face of Gordon's contract or covenant he was liable at law for the $500, and at least four years interest. If he can be relieved either in a Court of Law or Chancery, from liability to that extent, it must be by reason of some fact or circumstance which entitles him in equity to reduce its amount; and Courts have allowed evidence simply of the amount of the consideration actually received by him, if less than that expressed in his deed, to be given in evidence, and to have the effect of fixing the measure of his vendee's redress. This is regarded as an equity in his favor. But if the amount of consideration specified in the deed, be inserted for a sinister object, as to entrap a purchaser into confidence in a bad title, what becomes of the equity? In this case the title was disputed, and the result shows that it was no title. The consideration of $500, four hundred dollars more than the price received for the land, was deliberately and by contract inserted in the deed, and the defendant knowing the immorality of the act, took care to require a bond to indemnify him against

the legal effect. I think the Court ought to have given the charge, as requested, and that it ought not to have allowed the defendant to avail himself of a rule, of at least doubtful propriety, established to shield him from injustice, to inflict wrong and injury upon another.