27531. LIBERTY NATIONAL LIFE INSURANCE
COMPANY *v.* STINSON.

DECIDED NOVEMBER 28, 1939.   REHEARING DENIED DECEMBER 14, 1939.

*R. Carter Pittman,* for plaintiff in error.   *D. W. Mitchell,* contra.

MACINTYRE, J.   James B. Stinson brought suit against Liberty National Life Insurance Company in the superior court of Whitfield County upon a policy of life insurance upon the life of Ethel Mulkey, insured, in which Stinson was named as beneficiary.  He alleged that the premiums were paid and that the policy was in full force and effect on the date of the death of the insured Ethel Mulkey.  The insurance company denied liability to Stinson under the policy and pleaded specially that at the time of the application for insurance and at the time of the delivery of the policy Mrs. Ethel Mulkey was suffering from what is commonly known as "milk leg," consisting of a large ulcer extending from her knee to her ankle, which was accompanied by swelling and an offensive odor.  It was also alleged that the death of Ethel Mulkey was caused by a blood clot originating from the sore and going into the blood stream, blocking the passage of blood to her heart and causing a cerebral hemorrhage, paralysis, and death.  It was also alleged that at the time the application was made and at the time of the delivery of the policy Ethel Mulkey was suffering from epilepsy, and had been under the treatment of physicians therefor; that Mrs. Mulkey was not in sound health as required by the policy; that the policy never took effect by reason thereof, and that a fraud was perpetrated upon the insurance company by misrepresentations material to the risk.  A verdict was rendered in favor of the plaintiff.  The defendant's motion for new trial as amended was overruled and he excepted.

The evidence unquestionably was in conflict as to whether or not the agent of the insurance company and the company knew of the woman's having "milk leg" at the time of the application for the insurance policy and at the time of the delivery of the policy. As to the question of epilepsy, the mother of the insured testified that the insured had lived with her for the last twelve or thirteen years of her life, during which time "she was able to do work.  She tufted, washed dishes, carried water, and other housework.  She never had a doctor until her last sickness.  I lived in the house with her," and that "I never heard of her having epileptic fits."   Q. "What seemed to be her condition over that period of time?"

A. "I don't know of anything. She was apparently in pretty good health.". While on cross-examination the mother testified that the daughter had fainting spells, she never would say that the daughter had epilepsy or that the fainting spells were serious in effect. On redirect examination, the mother testified that it had been six or seven years prior to her death since her daughter had had one of these fainting spells. See in this connection *Wallis* v. *Watson,* 184 *Ga.* 38, 40 (190 S. E. 360) ; *Evans* v. *Schofield's Sons Co.,* 120 *Ga.* 961 (48 S. E. 358). Dr. Shellhorse, the attending physician and the only physician in the case, testified that he "never treated her [the insured] when she was suffering from an epilepsy attack. As to what was the cause of her death, she was paralyzed; one side was definitely paralyzed. That type of paralysis is usually caused by a cerebral hemorrhage, a plain hemorrhage; bleeding inside the brain." We think that the testimony of the doctor was to the effect that either "milk leg" or epilepsy might have caused the type of paralysis from which the insured died. The doctor positively testified that she had a disease which was known as "milk leg," but he never even gave it as his opinion that the insured had had epilepsy. There was testimony of other witnesses from which the jury might have drawn the conclusion, if they had seen fit to do so, that the insured had suffered epilepsy. The jury likewise having resolved, by their verdict, this issue against the defendant, it seems to us that the jury were authorized to find that the insured did not have epilepsy but had "milk leg," which contributed to the death of the insured, but that the company through its authorized agent had known the insured was suffering from this disease at the time the policy was issued and delivered, and therefore had waived the same. The evidence authorized the verdict.

■ "A person who has no insurable interest in the life of another person can not procure and maintain a policy of insurance on the life of such person, naming himself as beneficiary." *Gulf Life Ins. Co.* v. *Davis,* 52 *Ga. App.* 464, 465 (183 S. E. 640) ; *Guaranty Life Ins. Co.* v. *Graham,* 58 *Ga. App.* 767, 768 (199 S. E. 829). "This of course does not contravene the rule that a person has an insurable interest in his own life, and may take out a policy of insurance on his own life and name any one he desires as his beneficiary." *Gulf Life Ins. Co.* v. *Davis,* supra. "'In a suit on a policy of life insurance procured by the insured for the benefit of another, it is

not necessary that the declaration should aver that the beneficiary had any interest in the life of the insured, but a different rule prevails where one procures an insurance on the life of another. In such a case, the plaintiff must aver, in his declaration, that he had an insurable interest in the life insured.'" *Guaranty Life Ins. Co.* v. *Graham,* supra..

The mere fact that one is a brother does not give him an insurable interest in the life of his married sister who has married children. The petitioner in this case avers in paragraph 2 of his petition that the defendant issued its policy of life insurance upon the life of his sister Ethel Mulkey, and that the petitioner, her brother, was named as beneficiary. Paragraph 3 alleges that the petitioner paid the premiums on the policy, and that said policy was in full force and effect on the day of the death of the insured. There was no demurrer to the petition. The evidence was that the application was signed by Ethel Mulkey, the insured, with her mark, and that the application stated that she wished her brother, the petitioner, to be inserted in the policy as her beneficiary. There was a certificate attached to the application by the agent of the insurance company that the application was signed in his, the agent's, presence, and that the beneficiary, the petitioner and brother of the insured, was to pay the premiums. This evidence was unobjected to, and authorized the jury to find that the person whose life was insured had made application and procured a policy in which she had named her brother as beneficiary. This evidence being introduced without objection, even if the evidence could have been rejected as not conforming to the allegations as laid, it in fact related to the cause of action declared upon, and by failing to so object the defendant waived its objection to the pleading.

"In such a case our courts have repeatedly held that a party waives his objection to the pleadings by allowing such evidence to go to the jury without objection; the reason for this just rule in such a case evidently being that had objection been made, the party tendering such evidence might have amended his pleadings so as to conform thereto. One of the principal functions of amendments is to conserve this right." *Napier* v. *Strong,* 19 *Ga. App.* 401, 406 (91 S. E. 579); *Rocker* v. *DeLoach,* 178. *Ga.* 480, 485 (2) (173 S. E. 709); *Columbia Fire Ins. Co.* v. *Tatum,* 46 *Ga. App.* 475 (4) (167 S. E. 911). Thus, in this

case, even if it be said that the pleadings do not show positively and affirmatively that the insured procured the insurance rather than the beneficiary, nevertheless, under the rule above stated, the case here went to trial, and if the objection had been made that the pleadings showed that the beneficiary procured the insurance on the life of the insured and the proof showed that the insured procured the insurance and named her brother as beneficiary, the plaintiff might have amended his pleadings so as to conform to the evidence. The petition could have been amended if proper objection had been made to the evidence. *National Life and Accident Ins. Co.* v. *Hankerson,* 49 *Ga. App.* 350 (3) (175 S. E. 590).

■ The amended ground of the motion for new trial complains of the following charge to the jury: "I charge you that where an insurance company, or its agent, knows of the condition of the applicant's health but nevertheless accepts the applicant, that would be a waiver of any serious misrepresentation as regards the condition of the health of the insured. But in any case, and in this case, as to whether or not the company knew of her condition, if this woman was not in sound health, as to whether the company or its agent knew of this condition, is a question for you to determine under all the facts and under all the circumstances of the case." The motion complains that "the charge submitted to the jury an issue not made by the evidence, and authorized the jury to find that the company had waived any misrepresentations as regards the condition of the health of the insured, although there was no evidence that the company was put on notice of the condition of the health of the insured with respect to epileptic and fainting spells. The said charge deprived the defendant of its defense as to a misrepresentation as to a material matter affecting the health of the insured and invalidating the policy. Said charge authorized the jury to find that the knowledge of the agent of the company as to a sore leg would constitute a waiver of any misrepresentation with respect thereto and also would constitute a waiver of any misrepresentations with respect to spells of epilepsy."

The court here was charging the jury the doctrine that if the insurance company knew of the condition of the applicant's health, but nevertheless·accepted the application, that would be a waiver of any serious misrepresentation as regarded the condition of the

health of the insured. The judge was not required to repeat and reiterate every specific fact upon which the defendant based its defense and charge that this general doctrine or principle of law pertinent to the case applied to this specific fact, and where the defense was based upon the alleged fact that death resulted from a condition of her ill health, which was manifested by "milk leg" or epilepsy, one or both, the judge's charge in effect instructed the jury to apply this doctrine to the evidence of both the plaintiff and the defendant in the light of their respective contentions as set out in the pleadings. It is evident that the judge did not intend to charge, nor do we think it can be reasonably said that the jury thought that the judge was charging, that the company had waived any material misrepresentations of the health of the insured manifested by epilepsy, when the plaintiff neither in his petition nor in his evidence ever proved or contended that the insured had epilepsy, but on the contrary always strenuously contended that she never had had any such disease as epilepsy. *Hall* v. *State, 7 Ga. App.* 186 (66 S. E. 486); *Stowe* v. *State,* 51 *Ga. App.* 726 (181 S. E. 419). The charge was merely a hypothetical statement of what would be a waiver of any serious misrepresentation as regarded the condition of the health of the insured. There was no contention by either side that there was a waiver of the company's knowledge that the insured had a disease known as epilepsy; therefore it seems to us that the jury obviously knew from the judge's charge that he was simply referring to the question of whether or not the company knew of the disease known as "milk leg."

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*

### ON MOTION FOR REHEARING.

MacIntyre, J. The language in the second division of the opinion immediately following the citation of *Columbia Fire Ins. Co.* v. *Tatum,* has been substituted for the language first used. The language of the petition does not positively or affirmatively allege who procured the policy of insurance, hence the cases of *Fowler* v. *Johnson,* 151 *Ga.* 122 (106 S. E. 90) and *New Zealand Fire Ins. Co. Ltd.* v. *Brewer,* 29 *Ga. App.* 773 (116 S. E. 922) are differentiated from the instant case. All the grounds of the motion for rehearing being considered, it is denied.

*Broyles, C. J., and Guerry, J., concur.*