## 65005. BURTON v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

BIRDSONG, Judge.
Appellant Ava Maria Burton, as administratrix of her deceased mother's estate, instituted this action against appellee to recover $200,000 in life insurance proceeds allegedly due pursuant to a policy of life insurance issued to the deceased on March 16, 1979. Appellee denied liability pursuant to the policy, and the complaint was subsequently amended to add the deceased's son as a party plaintiff and to add a wrongful death count. After discovery, appellee moved for summary judgment as to both counts of the complaint. The trial court denied the motion as to the cause of action on the policy but granted the motion as to the wrongful death cause of action. This appeal is from the award of partial summary judgment to appellee. The court's denial of appellee's motion as to the cause of action on the

policy is not in issue.

The facts relevant to this appeal and developed in discovery in this action show the following: On February 15, 1979, a sales agent employed by appellee procured an application for $200,000 in life insurance from the deceased, appellants' mother. The agent testified in his deposition that he had met two days earlier with the deceased and Willie S. Adams for the purpose of discussing insurance. The agent testified that at the close of the first meeting the deceased stated "let us discuss it (the proposed insurance policy)" and "we'll get back in touch with you." Adams was again present at the February 15 meeting when the application for insurance was completed. Although disputed by the agent, the receipt attached to the application showed that Adams made a conditional payment of $193.23 on the policy. Adams was listed as the beneficiary on the application. His relation to the deceased was listed as "business manager."

A second application for the same insurance was completed on February 16. The beneficiary listed on the second application was appellant Ava Maria Burton. The agent testified that the second application, and not the first showing Adams as beneficiary, was processed to increase the chances that the policy would be issued. The agent testified that he explained to the deceased that she needed to change the designated beneficiary to a relative if she wanted the policy issued, and that she could make Adams the beneficiary as soon as the policy was issued. In order to facilitate the change of beneficiary, the deceased completed on February 16 a change of beneficiary form designating Adams as beneficiary. The agent dated and submitted the change of beneficiary form on March 16, 1979. In addition to initiating the change of beneficiary scheme, the agent falsified the deceased's residence history and "estimated" her income to be approximately four times greater than the actual amount. The evidence developed through discovery also indicates that the agent failed to disclose on the application all known facts about the deceased's employment and educational status.

As stated, a policy of life insurance in the amount of $200,000 was issued to the deceased on March 16, 1979. On the same date, the beneficiary under the policy was changed from Ava Maria Burton to Willie S. Adams. The deceased was murdered on May 18, 1979. Adams was convicted of the murder and sentenced to life imprisonment. For a recitation of the facts developed at Adams' trial, see *Adams v. State,* 246 Ga. 119 (269 SE2d 11). *Held:*

1. Ostensibly, we are called upon to determine whether Georgia law recognizes a cause of action for wrongful death based on an insurance company's alleged breach of a duty to exercise reasonable

care in the issuance of a life policy. See, e. g., Ramey v. Carolina Life Ins. Co., 244 S.C. 16 (135 SE2d 362); Liberty Nat. Life Ins. Co. v. Weldon, 267 Ala. 171 (100 S2d 696); Lopez v. Life Ins. Co. of North America, —— Fla. App. —— (406 S2d 1155) (currently pending in Fla. Supreme Court, Case No. 61558). See also Wren v. New York Life Ins. Co., 59 F.R.D. 484 (3) (N.D. Ga. 1973). However, pretermitting the question of whether appellant's wrongful death cause of action states a claim under Georgia law is the question of whether such a cause of action could be maintained in this case in view of the fact that appellant's deceased indisputably applied for and was issued the policy of insurance in question. We think not and affirm the trial court's award of partial summary judgment to appellee.

Code Ann. § 56-2404 (4) provides that "[a]ny personal insurance contract procured or caused to be procured upon another individual is void unless the benefits under such contract are payable to the individual insured or his personal representative, or to a person having, at the time when such contract was made, an insurable interest in the individual insured." Thus, "wager" contracts procured on another by a beneficiary having no "insurable interest," Code Ann. § 56-2404 (1), in the life of the insured are void as against public policy. The obvious purpose of this rule of law, which appears to be universally applied, is to prevent the creation of the dangerous situation in which one individual, with no insurable interest in the life of another, is allowed to create a pecuniary interest in the death of the other against his will. Although we have located no Georgia cases on the issue, the courts of at least three sister states have recognized, in the above-cited decisions, that public policy against "wager" policies is so strong that the carrier issuing such a policy may be liable for death or other injury to the insured proximately resulting from the carrier's failure to exercise reasonable care in the issuance of the policy.

However, Code Ann. § 56-2404 (2) provides that "[a]n individual . . . may lawfully take out a policy of insurance on his own life, health or bodily safety and have the same made payable to whomsoever he pleases, regardless of whether the beneficiary so designated has an insurable interest." Consequently, the insured can do that which cannot be done without his consent, and the insured may always grant to another a pecuniary interest in the insured's life even though the other has no insurable interest whatsoever in the insured. *United Ins. Co. of America v. Hadden,* 126 Ga. App. 362, 363 (190 SE2d 638). It necessarily follows that an insurer can incur no liability for increasing the risk to the life of the insured by issuing a policy designating as beneficiary a person with no insurable interest in the insured's life if the policy is procured with knowledge of and at the

behest of the insured. Furthermore, the insurer is liable, under normal circumstances, to remit the proceeds under the policy to the designated beneficiary. *Hadden,* supra.

There is no genuine controversy in the present case over whether the deceased consented to the issuance of a $200,000 policy of life insurance on her life designating Adams as beneficiary. Appellants do not dispute the fact that the deceased executed the original application designating Adams as beneficiary, the second application designating her daughter as beneficiary, and the change of beneficiary form again designating Adams as beneficiary. The deceased also went through the necessary medical examination and telephone investigative interview prior to the issuance of the policy. Appellants attempt to circumvent these facts, however, by making a clever argument based upon the decision of the Eighth Circuit Court of Appeals in New England Life Ins. Co. v. Null, 605 F2d 421 (8th Cir. 1979), and the preceding decisions in the same case. The court in the latter case upheld the lower court's order voiding the insurance policy in question on the ground that the insured "was merely a pawn," or an "innocent instrumentality," in a scheme by the beneficiary to obtain the proceeds under the policy through the insured's murder. Null, supra, pp. 422, 425. The court held that the policy was, in substance, procured by the beneficiary through the insured and was, therefore, void, thus precluding recovery of the proceeds under the policy by the insured's estate. Appellee has raised several "innocent instrumentality" defenses to the cause of action on the policy in the present case. Appellants argue that a finding, which is arguably supported by the facts in the record, that the deceased was a mere "innocent instrumentality" in Adams' scheme to obtain the proceeds through her murder would be tantamount to a finding that the policy was, in substance, procured by Adams, who appears to have had no insurable interest in the insured's life, and was void under Code Ann. § 56-2404 (4). Appellants further assert that appellee, through its sales agent, did not exercise reasonable care in a scheme that amounted to the issuance of the insurance policy to a beneficiary who had no insurable interest in the life of the insured and, accordingly, should be liable in tort to the deceased's estate.

While appellant's argument appears logical on its face, we feel it ignores two important factors. First, the legislature of this state has expressly provided that an individual may procure a policy of insurance on his life and name "whomsoever he pleases" as beneficiary. Thus, an insurance company can breach no common law or statutory duty owed to the insured by failing to inquire into the insured's motive or intent in applying for insurance and naming as beneficiary a person with no insurable interest. If a duty of

reasonable care not to increase the risk of harm to the insured in connection with the issuance of life insurance policies does exist under Georgia law, and we have expressly reserved decision on that issue, the duty could arise only when the insurance company issues a policy that both is prohibited by statute or common law and increases the risk of danger to the insured's person. A policy is not void *ab initio* under Code Ann. § 56-2404 (4) unless it is "procured or caused to be procured upon another individual," and the undisputed facts in the present case show that the deceased applied for and took all necessary steps to procure a policy of insurance on her life, which is expressly approved by Code Ann. § 56-2404 (2). Her motive and intent in so acting do not change these facts.

Second, and equally important, "[t]here are few rules of law more fundamental than that which requires a party to read what he signs and to be bound thereby." *Berman v. Rubin,* 138 Ga. App. 849, 854 (227 SE2d 802). The deceased indisputably executed the application for a policy of insurance in the amount of $200,000 on her life, and she indisputably executed the change of beneficiary that made Adams the beneficiary under the policy. Neither could she nor can her estate now argue that she was not the party who, in fact, procured the insurance. Even if it is assumed, for the sake of argument, that appellee breached a duty of reasonable care owed to the deceased in issuing the subject insurance contract, appellee's breach of that duty could not constitute the proximate cause of appellants' damage. "In every tort action, causation must be established. Where, as here, there is an intervening factor which breaks that chain of causation leading from defendant to plaintiff[s], there can be no recovery. In this case the [deceased's opportunity] to read and comprehend [the terms of the application and change of beneficiary form] . . . constitute[s] that intervening cause." *Berman,* supra, p. 855. Under the facts of this case, it was not appellee's negligence that proximately resulted in the increased risk of danger to the deceased, but rather her own actions in applying for the insurance policy in question and designating Adams as beneficiary. Accordingly, the trial court properly granted appellee summary judgment as to the wrongful death cause of action.

2. Nothing stated in Division 1 of this opinion should be construed as either an approval or a rejection of a cause of action for wrongful death against an insurance company arising from that company's negligent issuance of a life insurance policy that is void under Code Ann. § 56-2404 (4). Nor do we intimate approval or rejection of the "innocent instrumentality" defense, Null, supra, to a claim asserted under the policy, or the applicability or inapplicability of any such defense to the cause of action on the policy in this case.

The case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed and case remanded. McMurray, P. J., and Banke, J., concur.*

DECIDED DECEMBER 2, 1982.

*Ben Kingree III, Robert A. Barnaby II,* for appellant.
*Glenn Frick, Daryll Love, R. Daniel McGinnis,* for appellee.